FRANKLIN | SOTO LLP
Joshua D. Franklin, SBN 264536
Cheryl Dunn Soto, SBN 250892
445 Marine View Avenue, Suite 300
Del Mar, CA 92014
619.872.2520
josh@franklinsoto.law
cheryl@franklinsoto.law

*Attorneys for Plaintiff Ajay Atul Doshi*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AJAY ATUL DOSHI,<br><br>Plaintiff,<br><br>v.<br><br>ECOMMISSION SOLUTIONS, LLC;<br>PAUL G. HOFFMANN; and DOES 1<br>through 10, inclusive,<br><br>Defendants. | Case No.: 18-cv-0781-JLS-BLM<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:      July 12, 2018<br>Time:     1:30 p.m.<br>Ctrm:    4D<br>Judge:   Hon. Janis L. Sammartino |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ……………………………………………………1

II.   STANDARD OF REVIEW………………………………………….....2

III.  ARGUMENT……………………………………………………….3

    A.  Plaintiff Doshi Has Sufficiently Alleged a Fraud Claim. . . . . . . .3

       1.  Mr. Doshi Has Alleged an Actionable
          Misrepresentation ...…………………………………………4

       2.  Mr. Doshi Has Properly Alleged Facts From
          Which a Fact Finder Can Infer Defendants
          Never Intended to Perform…………...…………………….7

       3.  Plaintiff Doshi Has Sufficiently Pled
          Reasonable Reliance…………………………………………..9

    B.  Plaintiff Doshi Has Sufficiently Alleged a Claim for Negligent
      Misrepresentation………………………………………………11

    C.  Plaintiff Doshi Has Sufficiently Alleged a Claim for Violation of Cal.
      Corp. Code § 25401………………………………………..…11

       1.  Plaintiff Doshi Has Sufficiently Alleged Defendants
          Knew No ESOP Existed at the Time They
          Purported to Grant Mr. Doshi 150,000 Stock Options……..12

       2.  Plaintiff Doshi Has Sufficiently Alleged the Statement Regarding
          the Stock Option Plan Was Untrue…………………………13

       3.  Plaintiff Doshi Has Sufficiently Alleged the Statement Regarding
          the Stock Option Plan Was Material………………..……..14

    D.  Plaintiff Doshi Has Sufficiently Alleged a Breach of
      Contract Claim………………………………………………14

    E.  Plaintiff Doshi's Implied Covenant Claim Does Not Contradict His
      Employment Agreement……………………………………..16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

F.  Plaintiff Doshi Has Sufficiently Alleged a Claim for Breach of Fiduciary Duty Under New York Law………………………………………18

G.  Plaintiff Doshi Is Entitled to an Accounting Under New York Law…………………………………………………20

IV.  CONCLUSION…………………………………………………..20

1

## <u>**TABLE OF AUTHORITIES**</u>

2

3 **FEDERAL CASES**

4

5

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007)......................................................................................2

6

7

*Bobbleheads.com, LLC v. Wright Bros., Inc.*
   259 F. Supp.3d 1087 (S.D. Cal. 2017) ....................................................2

8

9

*Davis v. HSBC Bank Nev., N.A.*
   691 F.3d 1152 (9th Cir. 2012) ................................................................2

10

11

*H/R Stone, Inc. v. Phoenix Bus. Sys., Inc.*
   660 F.Supp. 351 (S.D.N.Y. 1987) ........................................................15

12

13

*In re Verisign, Inc., Derivative Litigation*
   531 F.Supp.2d 1173 (N.D. Cal. 2007)...................................................19

14

15

*In re Zoran Corp. Derivative Litigation*
   511 F.Supp.2d 986 (N.D. Cal. 2007)....................................................15

16

17

*Premiere Innovations, Inc. v. IWAS Industries, LLC*
   No. 07CV1083 BTM (BLM), 2007 WL 2873442 (S.D. Cal. Sep. 28, 2007)..........7

18

19

*Scully v. US Wats, Inc.*
   238 F.3d 497 (3d Cir. 2001) ..................................................................15

20

21

*Soley v. Wasserman*
   823 F.Supp.2d 221 (S.D.N.Y. 2011) ....................................................20

22

23

*United States v. Ritchie*
   342 F.3d 903 (9th Cir. 2003)…………………………………………........2

24

25 **STATE CASES**

26

27

*Cohen v. S & S Construction Co.*
   151 Cal. App. 3d 941 (1983)…………………………………………........6

28

*Cottone v. Selective Surfaces, Inc.*
   68 A.D.3d 1038 (N.Y. Sup. Ct. 2009)……………………………………...........19

*Kolchins v. Evolution Markets, Inc.*
   128 A.D.3d 47, 8 N.Y.S.3d 1 (2015), *aff'd* 31 N.Y.3d 100 (2018).........................5

*Lazar v. Superior Court*
   12 Cal.4th 631 (1996) ......................................................................9

*Locke v. Warner Bros., Inc.*
   57 Cal. App. 4th 354 (1997) .............................................................9

*Manderville v. PCG & S Group, Inc.*
   146 Cal. App.4th 1486 (2007) ..........................................................3

*OCM Principal Opportunities Fund v. CIBC World Markets Corp.*
   157 Cal. App. 4th 835 (2007) .........................................................11

*People ex rel. DuFauchard v. O'Neal*
   179 Cal. App. 4th 1494 (2009) .......................................................12

*Racine & Laramie, Ltd. v. Department of Parks & Recreation*
   11 Cal.App.4th 1026 (1992) ...........................................................17

*Roni LLC v. Arfa*
   74 A.D.3d 442, 903 N.Y.S.2d 352 (2010) .........................................19

*Stuart Silver Assocs., Inc. v. Baco Dev. Corp.*
   245 A.D.2d 96, 665 N.Y.S.2d 415 (1997)..........................................19

*Underwriters Clearing House, Inc. v. Natomas Co.*
   184 Cal.App.3d 1520 (1986)……………………………………………14

**FEDERAL STATUTES, RULES AND REGULATIONS**

Federal Rule of Civil Procedure 8(a)(2) .......................................................2

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
-iv-

**STATE STATUTES, RULES AND REGULATIONS**

N.Y. Business Corporations Law § 505…………………………………………10, 15

N.Y. Limited Liability Company Law § 602 ..............................................................18

**OTHER AUTHORITIES**

California Civil Jury Instructions (CACI) No. 1900 ....................................................3

Restatement (Second) of Contracts § 24……………………………………………… 5

## I.      **INTRODUCTION**

Defendants Paul Hoffmann and ECommission Solutions, LLC ("ECS") convinced Plaintiff Ajay Doshi to join ECS based on written misrepresentations about an employee stock option plan ("ESOP") they knew did not exist. Once Mr. Doshi discovered the truth, Defendants continued to deceive him and promised he would be "taken care of" following the company's imminent asset sale. Defendants later disavowed any and all obligations and promises to Mr. Doshi, and now seek to dismiss all but one[1] of the claims asserted in his First Amended Complaint ("FAC")[2] primarily on the basis of (1) a mischaracterization of their fraud as unactionable statements or predictions of future events; and (2) the false premise that an employee of a limited liability company cannot participate in an ESOP. The Court should reject Defendants' attempt to escape liability through these misplaced technicalities.

First, Defendants' statements regarding the ESOP are actionable as fraud. Any attempt to recast such statements as good-faith promises to create an ESOP in the future overlooks the express terms of Mr. Doshi's Employment Agreement, which purported to grant him 150,000 stock options "*in accordance with the Company's stock option plan* and consistent with all other employees *participating* in the plan"[3] immediately upon his acceptance of the Agreement.

Second, Defendants' suggestion that Mr. Doshi could not reasonably have relied on their misrepresentations because he knew or should have known that a limited liability company could not issue stock options until it converted to a corporate form contradicts New York and California law, which allow for the

_____

[1] Defendants have not moved to dismiss Plaintiff Doshi's Seventh Cause of Action for Violation of California Labor Code Section 226(a).

[2] [Doc. #6]

[3] FAC, Ex. A, at 19/21.

1  issuance of stock options to employees of a limited liability company's subsidiaries
2  and/or affiliates.

3       The Court should accordingly deny Defendants' motion in its entirety and
4  allow each of Mr. Doshi's claims to proceed.

5  **II.**   **STANDARD OF REVIEW**

6       Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short
7  and plain statement of the claim showing that the pleader is entitled to relief."  Fed.
8  R. Civ. P. 8(a)(2).  To survive a motion to dismiss, a complaint must allege "only
9  enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp.*
10 *v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the
11 plaintiff pleads factual content that allows the court to draw the reasonable inference
12 that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S.
13 662, 678 (2009).  The Court need not find that the claim is probable, "but there must
14 be 'more than a sheer possibility that a defendant has acted unlawfully.'"
15 *Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp.3d 1087, 1094 (S.D. Cal.
16 2017) (quoting *Iqbal*, 556 U.S. at 678).

17      In conducting this analysis, the Court must accept all factual allegations as true
18 and construe them in the light most favorable to the nonmoving party.  *See Davis v.*
19 *HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012).  The determination of
20 whether the allegations in a complaint state a "plausible claim for relief" is "a
21 context-specific task that requires the reviewing court to draw on its judicial
22 experience and common sense."  *Iqbal*, 556 U.S. at 679.

23      The Court may consider documents attached to the complaint without
24 converting the motion to dismiss into a motion for summary judgment.  *United States*
25 *v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

26 //
27 //

28

## III.   ARGUMENT

### A.   Plaintiff Doshi Has Sufficiently Alleged a Fraud Claim.

Under California law, a fraud claim requires proof of the following elements: "(1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (4) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff." *Manderville v. PCG & S Group, Inc.*, 146 Cal. App.4th 1486, 1498 (2007) (citing CACI No. 1900) (internal emphasis removed).  Plaintiff Doshi's FAC alleges specific facts satisfying each of these elements as follows:

> 13.    The Employment Agreement . . . stated that Mr. Doshi would be granted 150,000 stock options, the terms and conditions of which would be "in accordance with the Company's stock option plan and consistent with all other employees participating in the plan." . . .
>
> . . .
>
> 15.    Unbeknownst to Mr. Doshi and contrary to the representations of Defendant HOFFMANN, ECS did not have a stock option plan in place at or near the time it offered Mr. Doshi the position of Vice President of Product Engineering.  In fact, ECS never implemented any stock option plan for the benefit of Mr. Doshi or any of its employees. . . .
>
> . . .
>
> 21.    . . . Defendant HOFFMANN advised Mr. Doshi that he was not legally entitled to any compensation as a result of the asset sale, but

nevertheless provided certain information purporting to reflect ECS's expenses incurred in coordinating and closing the asset sale.  The expense information provided to Mr. Doshi concealed the details of certain items comprising a substantial amount of the total purported expenses, including one expense item for $797,350.00, which was identified as "Contracted Success Fees," "Estimated LLC Taxes," and "Details Confidential."   Upon information and belief, the expense information provided to Mr. Doshi was false and misleading in that it substantially overstated the amount of expenses incurred by ECS.

. . .

24.     Defendants repeatedly misled Mr. Doshi regarding the material terms of his employment, including the purported employee stock option plan.  After Mr. Doshi learned that the stock option plan was never even created, Defendants continued to deceive Mr. Doshi to induce him to continue working at ECS by telling him he would be "taken care of" following the asset sale to Onyx.  Defendants also attempted to deceive Mr. Doshi in misrepresenting the true costs associated with the closing of Defendant ECS's asset sale to Onyx.

(FAC ¶¶ 13, 15, 21, 24.)

**1.     Mr. Doshi Has Alleged an Actionable Misrepresentation**

Defendants contend Mr. Doshi's fraud claim fails because the alleged misrepresentations about Mr. Doshi's stock options were merely promises to perform in the future and not misrepresentations of a past or existing material fact. Defendants' argument is misplaced.

In support of their argument, Defendants emphasize certain language in the Agreement stating "[y]ou *will be* granted one hundred fifty thousand (150,000) stock options . . ." (Def. Mot. at 5) (emphasis in original), but omit with an ellipses the

1    words "pursuant to this Agreement."  (FAC, Ex. A, p.19.)  The omitted language is

2    significant in that it confirms the stock options were purportedly granted (and,

3    therefore, existed) as part of the Employment Agreement – that is, immediately upon

4    Mr. Doshi's acceptance of the Employment Offer.

5         The Agreement also states in part that (1) the terms and conditions of the grant

6    "will be *in accordance with the Company's stock option plan* and consistent with all

7    other employees *participating in the plan*;" and (2) "[t]he grant will be subject to the

8    following vesting schedule: Twenty-five percent (25%) *upon joining the Company . .*

9    *. .*"  (FAC, Ex. A, p.19 (emphasis added).)  This language underscores that

10   Defendants represented an existing fact – that the purported ESOP existed as of the

11   date of the Employment Offer – and refutes their contention that the Agreement

12   merely promised the creation of an ESOP at some unspecified point in the future.

13        The fundamental flaw in Defendants' argument is that it overlooks the

14   presentation of the Agreement to Mr. Doshi as an "Employment Offer," the terms of

15   which became binding immediately upon Mr. Doshi's acceptance, which could have

16   occurred on the same date of the offer.  (*See* FAC, Ex. A, p.17, 20; *Kolchins v.*

17   *Evolution Markets, Inc.*, 128 A.D.3d 47, 59, 8 N.Y.S.3d 1, 9 (2015), *aff'd* 31 N.Y.3d

18   100 (2018) ("[A]n offer is the manifestation of willingness to enter into a bargain, so

19   made as to justify another person in understanding that his assent to that bargain is

20   invited and will conclude it.") (quoting Restatement (Second) of Contracts § 24)).

21   Indeed, nearly all of the Agreement's material terms are presented in the same

22   manner.  For example, the Employment Offer/Agreement provides:

23        • "You *will be* part of ECS's leadership team . . ."

24        • "You *will* report to the Senior Vice President & CTO . . ."

25        • "You *will be* responsible for the technical implementation of . . ."

26        • "Your employment with ECS *will be* 'at will'"

27        • "Your base annual salary *will be* . . ."

28

(FAC, Ex. A, pp. 18-19] (emphasis added).)

Because Mr. Doshi's acceptance could have occurred at any moment after the offer was transmitted via email, it defies common sense to read the Employment Agreement as contemplating the formation of an ESOP at some point after the offer was presented to Mr. Doshi but before the time the Employment Agreement became effective, i.e., the time at which Mr. Doshi was granted all of the purported stock options, 25 percent of which were immediately vested.

Quite apart from the foregoing, there are exceptions to the general rule that actionable misrepresentations must concern past or existing facts. *Cohen v. S & S Constr. Co.*, 151 Cal. App. 3d 941, 946 (1983).  The case of *Kelly v. Intelligenetics, Inc.*, No. C 95-20063 RMW, 1995 WL 232387, at *2 (N.D. Cal. Apr. 10, 1995), is particularly instructive here.  In *Kelly*, the plaintiff's fraud claims alleged the following statements by Amoco, the 100% owner of the plaintiff's employer, IGI, during Amico's negotiations with OMG for the purchase of some or all of Amoco's interest in ICI: (1) "statements by Amoco and OMG and their agents that plaintiff 'would continue to be employed in a managerial capacity by IGI after the sale and direct[ing] him not to discuss his prospective employment or compensation package with Defendant OMG until the negotiations were concluded,' and (2) OMG's 'represent[ations] to Plaintiff that he was essential to the future operation of IGI, that he would receive an initial annual salary of $153,000, and that he would be granted an option to purchase 500,000 to 600,000 shares of OMG after close of escrow for OMG's purchase of stock of IGI.'"  *Id.* at *2.

The court found that these alleged facts, if believed, "could support a finding that defendants' alleged statements were actionable misrepresentations of fact rather than 'predictions as to future events, or statements as to future action by some third party . . . ."  *Id.* at *4.  The court noted the alleged statements "were far more definitive and specific" than the type of predictive, ambiguous statements found not

1   to be actionable in other cases.  And because Amoco and OMG were negotiating the

2   sale of IGI, the court observed "they were in a position to know whether a decision

3   had been made about plaintiff's employment with IGI after consummation of the sale

4   to OMG."  *Id.*  The complaint also alleged that "plaintiff was assured that such a

5   decision had been made and, in fact, was informed of specific aspects of his future

6   compensation."  *Id.*  On these facts, the court held that the plaintiff had sufficiently

7   alleged a "misrepresentation of fact" in support of his fraud claim.

8        Here, at the time Defendants presented the employment offer to Mr. Doshi,

9   they were in a position to know whether it was possible to grant Mr. Doshi stock

10  options that would partially vest on the date he joined the company.  As in *Kelly*, such

11  representations are properly deemed misrepresentations of fact.  Accordingly, the

12  Court should find that Mr. Doshi has adequately pled misrepresentations of an

13  existing fact in support of his fraud claim.

14         **2.**     **Mr. Doshi Has Properly Alleged Facts From Which a Fact**

15                  **Finder Can Infer Defendants Never Intended to Perform.**

16        Defendants next contend that Plaintiff Doshi's fraud claim fails to the extent it

17  is construed as a claim for "false promise" or "promissory fraud" because he has not

18  specifically averred Defendants never intended to perform by issuing stock options to

19  Mr. Doshi in the future. (Def. Mot. at 5-6.)

20        First, as set forth above, Mr. Doshi has alleged misrepresentations of fact,

21  including that Defendants misrepresented the existence of an ESOP, a claim separate

22  and apart from a "false promise" or "promissory fraud" claim.

23        Second, as stated in Defendants' own brief, "[t]o state a claim for promissory

24  fraud, a plaintiff must plead facts from which *it can be inferred* that the defendant

25  harbored an intention not to perform the terms of the contract at formation." (Def.

26  Mot. at 5 (citing *Premiere Innovations, Inc. v. IWAS Indus., LLC*, No. 07CV1083

27  BTM (BLM), 2007 WL 2873442, at *2 (S.D. Cal. Sep. 28, 2007) (emphasis added).)

28

The facts alleged in the FAC are more than sufficient to satisfy this standard, particularly when construed in the light most favorable to Mr. Doshi.  For example, the FAC alleges the following:

> 13.     The Employment Agreement . . . stated that Mr. Doshi would be granted 150,000 stock options, the terms and conditions of which would be "in accordance with the Company's stock option plan and consistent with all other employees participating in the plan." . . .
>
> . . .
>
> 15.     Unbeknownst to Mr. Doshi and contrary to the representations of Defendant HOFFMANN, ECS did not have a stock option plan in place at or near the time it offered Mr. Doshi the position of Vice President of Product Engineering.  In fact, ECS never implemented any stock option plan for the benefit of Mr. Doshi or any of its employees. . . .
>
> . . .
>
> 21.     . . . Defendant HOFFMANN advised Mr. Doshi that he was not legally entitled to any compensation as a result of the asset sale, but nevertheless provided certain information purporting to reflect ECS's expenses incurred in coordinating and closing the asset sale.  The expense information provided to Mr. Doshi concealed the details of certain items comprising a substantial amount of the total purported expenses, including one expense item for $797,350.00, which was identified as "Contracted Success Fees," "Estimated LLC Taxes," and "Details Confidential."   Upon information and belief, the expense

1  information provided to Mr. Doshi was false and misleading in that it

2  substantially overstated the amount of expenses incurred by ECS.

3  (FAC ¶¶ 13, 15, 21.)

4  These allegations alone establish Defendants (1) represented the existence of

5  an ESOP, a plan in which other employees were "participating"; (2) knew no ESOP

6  existed; and (3) denied Mr. Doshi was entitled to any compensation following the

7  sale of the company's assets – a "liquidity event" that triggered the vesting of all of

8  Mr. Doshi's stock options pursuant to the Employment Agreement.  (*See* FAC, Ex. A,

9  p. 19).  In other words, Plaintiff Doshi has pled facts from which a trier of fact may

10  infer that Defendants had no intent to perform certain terms of the contract at

11  formation.  *See Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996) ("A promise to

12  do something necessarily implies the intention to perform; hence, where a promise is

13  made without such intention, there is an implied misrepresentation of fact that may be

14  actionable fraud.")*; Locke v. Warner Bros., Inc.*, 57 Cal. App. 4th 354, 368 (1997)

15  ("Fraudulent intent must often be established by circumstantial evidence, and may be

16  inferred from such circumstances as defendant's failure even to attempt

17  performance."))

18  **3.    Plaintiff Doshi Has Sufficiently Pled Reasonable Reliance.**

19  Defendants contend "[t]he allegations in the FAC refute any inference of

20  reliance." (Def. Mot. at 7.).  More specifically, Defendants argue Mr. Doshi's

21  reliance could not have been reasonable since he was a "sophisticated party" who

22  "knew or should have known that ECS was a limited liability company and would be

23  unable to grant stock options unless and until it converted to a corporate form."  (*Id*.

24  at 8.)  Defendants' argument is misplaced, however, because (1) the premise that

25  employees of a limited liability company cannot participate in an ESOP unless and

26  until the LLC converts to a corporation contradicts both New York and California

27

28

1   law; and (2) the facts alleged in the FAC render it reasonable for Mr. Doshi to have

2   accepted Defendants' statements without an independent inquiry or investigation.

3        Contrary to Defendant's suggestion, an ESOP can confer option rights to

4   employees of a subsidiary or affiliate of the entity issuing the options, including an

5   LLC.  In fact, New York Limited Liability Company Law Section 202 provides that a

6   limited liability company may "establish . . . profit-sharing plans, . . . plans, *equity*

7   *option plans* and other incentive plans for any of its members, managers, *employees,*

8   agents or consultants *or any of the directors, officers, managers, employees, agents or*

9   *consultants of its affiliates*."[4]  N.Y. L.L.C. Law § 202(l) (emphasis added).  New

10  York Business Corporations Law Section 505 also authorizes the issuance of stock

11  "rights or options to one or more . . . employees of the corporation *or a subsidiary or*

12  *affiliate thereof*."[5]  N.Y. Bus. Corp. L. § 505(d).  In other words, an ESOP participant

13  need not be employed directly by the entity issuing the options, meaning it would not

14  be unreasonable for Mr. Doshi to believe he was receiving stock options from ECS or

15  a corporate affiliate.

16       Furthermore, Mr. Doshi alleges ECS hired him as its Vice President of *Product*

17  *Engineering* (FAC ¶ 11), not as an expert in corporate governance or the intricacies

18  of ESOPs.  Notwithstanding Defendants' hollow assertion that Mr. Doshi was a

19  "sophisticated party," nothing in the FAC suggests it was unreasonable for him to

---

[4] Similarly, California Corporations Code Section 17701.05 provides that a limited
liability company has the power to "establish and carry out . . . *share purchase,*
*option,* . . . and other . . . and benefit plans . . . for all or any of the current or former . . .
. . *employees of the limited liability company or any of its subsidiary or affiliated*
*entities*."  Cal. Corp. Code § 17701.05(o) (emphasis added).

[5] Similarly, California Corporations Code Section 408 provides, in part, that "[a]
corporation may adopt and carry out a . . . stock option plan or agreement providing
for the issue and sale for such consideration as may be fixed of its unissued shares, or
of issued shares acquired or to be acquired, to one or more of the *employees* or
directors of the corporation *or of a subsidiary or parent thereof* . . . ." Cal. Corp.
Code § 408(a) (emphasis added).

accept Defendants' misrepresentations about the purported ESOP.  "Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact."  *OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 864 (2007).  The Court should accordingly decline to rule as a matter of law that Mr. Doshi's reliance was not reasonable.

> **B.**     **Plaintiff Doshi Has Sufficiently Alleged a Claim for Negligent Misrepresentation.**

Defendants challenge Plaintiff Doshi's negligent misrepresentation claim on the same grounds raised in support of their requested dismissal of the fraud claim – that is, because statements or predictions regarding future events are not actionable.  (Def. Mot. at 8-9.)  For the reasons discussed, *supra* at pp. 4-7, the Court should reject Defendants' argument and allow Mr. Doshi's negligent misrepresentation claim to proceed.

> **C.**     **Plaintiff Doshi Has Sufficiently Alleged a Claim for Violation of Cal. Corp. Code § 25401.**

Defendants request dismissal of Plaintiff Doshi's claim for violation of Corporations Code Section 25401 for failure to allege a material misrepresentation or intent.  (Def. Mot. at 9.)  To the contrary, Mr. Doshi has alleged (1) the materiality of the 150,000 stock options; (2) that he accepted his position with ECS in reliance on the stock options; and (3) that "he passed up other business opportunities to stay with ECS in reliance on the stock options . . . ."  (FAC ¶¶ 14, 15, 45.)  The FAC also alleges Defendants made the subject misrepresentations "with the intent of inducing Mr. Doshi to accept the position of Vice President of Product Engineering" (FAC ¶ 15) and later "continued to deceive Mr. Doshi to induce him to continue working at ECS . . . ." (FAC ¶ 24.)

1    Defendants also assert there is no civil liability for securities fraud "if the

2    defendant exercised reasonable care and did not know (or if he had exercised

3    reasonable care would not have known) of the untruth or omission." (Def. Mot. at 9

4    (quoting Cal. Corp. Code § 25501).)  But Defendants' reference to the Corporations

5    Code is misplaced in that Section 25501 establishes an *affirmative defense* for which

6    Defendants bear the burden of proof – not a pleading requirement – and Defendants

7    have yet to present any evidence suggesting their representations were made in good

8    faith.  *See People ex rel. DuFauchard v. O'Neal*, 179 Cal. App. 4th 1494, 1502

9    (2009) ("A defendant civilly sued for misleading statements in the sale of securities

10   may rely on the affirmative defense that . . . the defendant exercised reasonable care

11   and did not know of the untruth.").

12   **1.    Plaintiff Doshi Has Sufficiently Alleged Defendants Knew No**

13   **ESOP Existed at the Time They Purported to Grant Mr.**

14   **Doshi 150,000 Stock Options.**

15   Defendants cite *People v. Simon*[6] in support of their contention that Mr. Doshi

16   failed to allege they never intended to perform.  (Def. Mot. at 10.)  For the reasons

17   discussed, *supra* at pp. 7-9, Mr. Doshi has adequately alleged (1) Defendants knew

18   their representations were false when made; and (2) insofar as Defendants' statements

19   regarding ECS's nonexistent ESOP are evaluated as promissory fraud, facts from

20   which a trier of fact may infer Defendants had no intent to perform the terms of the

21   contract at formation.

22   Moreover, *Simon* is inapposite inasmuch as the case simply stands for the

23   proposition that a criminal violation of Section 25401 is not a strict liability offense.

24   *See Simon*, 9 Cal.4th at 522 ("We conclude . . . that knowledge of the falsity or

25   misleading nature of a statement or of the materiality of an omission, or criminal

26

27   _____

28   [6] 9 Cal.4th 493 (1995).

1  negligence in failing to investigate and discover them, are elements of the criminal

2  offense described in section 25401.").  Mr. Doshi's Section 25401 claim is in no way

3  premised on strict liability.

### 2.     Plaintiff Doshi Has Sufficiently Alleged the Statement Regarding the Stock Option Plan Was Untrue.

6          Defendants additionally challenge Mr. Doshi's Section 25401 claim on the

7  ground that their statements regarding the nonexistent ESOP were not untrue.  In

8  short, Defendants rely on the same mischaracterization of the statements at issue as

9  merely conveying an intent to "adhere to whatever stock option plan the Company

10 had in place" if and when it converted to a corporation at some unspecified time in

11 the future.  (Def. Mot. at 11.)  The Court should reject Defendants' reinterpretation of

12 their own Employment Agreement.

13         The Employment Agreement (1) purports to grant 150,000 stock options

14 "pursuant to this Agreement" – that is, at the moment Mr. Doshi signed to indicate

15 his acceptance of the Agreement; (2) describes "the Company's stock option plan" in

16 which other employees were "*participating*;" and (3) provides that 25 percent of the

17 options would vest immediately "upon joining the Company."  (*See* FAC, Ex. A, at

18 p.19/21.)  Notwithstanding this language purporting to grant a specific number of

19 options in an existing plan, Defendants suggest the Employment Agreement merely

20 promises to create an ESOP in the future.  (Def. Mot. at 11.)  Defendants' proffered

21 interpretation rests principally on one sentence providing that "[t]he strike price will

22 be determined once the Company's new corporate and capital structures are in place."

23 (FAC, Ex. A, at p.19/21)  But the strike price is the only component of the ESOP tied

24 to ECS's "new corporate and capital structures."  (*Id.*)  Had Defendants truly

25 intended to express a mere promise to establish an ESOP in the future – whether in

26 connection with a corporate conversion or otherwise – the Employment Agreement

27 could easily have stated just that.  It did not.  Defendants' reading of the Employment

28

Agreement stock option terms is creative but insufficient to satisfy their burden of showing that Mr. Doshi's Section 25401 claim is implausible on its face.

### 3.   Plaintiff Doshi Has Sufficiently Alleged the Statement Regarding the Stock Option Plan Was Material.

As a final ground for dismissing Mr. Doshi's Section 25401 claim, Defendants contend "[n]o reasonable investor would have considered the stock option plan material" because a limited liability company cannot grant stock options and, accordingly, "would never adopt a stock option plan."  (Def. Mot. at 11.)  For the reasons discussed, *supra* at pp. 9-11, Defendants' contention that an employee cannot participate in an ESOP unless employed directly by a corporation issuing the subject stock options is incorrect and belied by both New York and California law.

Furthermore, the materiality of representations about an ESOP – which is described by Defendant Hoffmann himself as one of the "material" terms of Mr. Doshi's employment offer[7] – should not be resolved as a matter of law at the pleading stage.  "A fact is material if there is a substantial likelihood that, under all the circumstances, a reasonable investor would consider it important in reaching an investment decision."  *Ins. Underwriters Clearing House, Inc. v. Natomas Co.*, 184 Cal.App.3d 1520, 1526 (1986).  Only where "reasonable minds cannot differ on the issue of materiality" may the Court resolve the issue as a matter of law.  *Id*.  When viewed in light of the facts set forth in the FAC and common sense, the Court should easily find that Mr. Doshi's Section 25401 claim adequately alleges the materiality of Defendants' misrepresentations.

### D.   Plaintiff Doshi Has Sufficiently Alleged a Breach of Contract Claim.

Defendants contend Mr. Doshi's breach of contract fails because the strike price of the stock options was not specified in the Employment Agreement.  (*See* Def.

---

[7] The cover letter attaching the Employment Agreement states that "the attached sets forth the *material terms* of the offer."  (FAC, Ex. A, p.17 (emphasis added).)

Mot. at 12-13.) Contrary to Defendants' contention, "not all terms of a contract need be fixed with absolute certainty." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg.*, 487 F.3d 89, 95 (2d Cir. 2007) (applying New York law). Even where a contract provides for a material term to be mutually agreed upon in the future, a court "may still find the presence of a binding agreement where the parties intend to enter into a binding contractual relationship." *Id*. at 96-97 (internal quotations omitted). "In determining whether the parties' conduct is consistent with the existence of a binding contract, it is necessary that the totality of all acts of the parties, their relationship and their objectives be considered." *H/R Stone, Inc. v. Phoenix Bus. Sys., Inc.*, 660 F.Supp. 351, 356 (S.D.N.Y. 1987). As applied here, the parties' alleged conduct, including Mr. Doshi's employment with ECS for more than two years, is consistent with an intent to be bound by the Employment Agreement.

Moreover, the absence of a definitive strike price does not render the Employment Agreement illusory because the determination of a strike price would be subject to (1) the terms and conditions of the purported ESOP, "consistent with all other employees participating in the plan"[8] (presumably including Defendant Hoffmann); (2) fiduciary obligations requiring a fair valuation of the issuing company's shares on the date the options were granted[9]; and (3) New York and/or federal law governing ESOPs. *See*, *e.g*., N.Y. Bus. Corp. L. § 505.

In support of their argument that the Employment Contract's express grant of stock options was "illusory," Defendants rely primarily on *Sugarman v. MCY Music*

---

[8] (FAC, Ex. A, at 19/21.)

[9] *See Scully v. US Wats, Inc.*, 238 F.3d 497, 507 (3d Cir. 2001) ("Stock options . . . allow an employee to buy the employer's stock at a . . . price (the 'strike price' or 'exercise price') fixed on the date that the stock is granted."); *In re Zoran Corp. Derivative Litig.*, 511 F.Supp.2d 986, 1017 (N.D. Cal. 2007) (noting directors on compensation committee owed duty of loyalty "to decide option-grant dates and to ensure that options were being granted at fair market value on the date of the grant").

1  *World, Inc.*, 158 F. Supp. 2d 316 (S.D.N.Y. 2001).  Defendants' reliance on

2  *Sugarman* is misplaced.  In *Sugarman*, the plaintiff entered an agreement to assist the

3  defendant companies in obtaining financing and/or equity investors.  *See id.* at 320.

4  Unlike here, the agreement in *Sugarman* contained a contingent and precatory

5  statement of intent to include the plaintiff in the defendants' stock option plan *at*

6  *some unspecified time in the future after the plan was established and in place*, apart

7  from the plaintiff's primary compensation.  *Sugarman*, 158 F. Supp. 2d at 325.

8  Notably, the agreement in *Sugarman* failed to specify "how many options might be

9  granted of what class of stock; when the options might be granted; the option term;

10  the exercise price; and the expiration date."  *Id.*  In contrast, Mr. Doshi's Employment

11  Agreement (1) indicates the number of options granted; (2) provides that the options

12  are granted pursuant to the Employment Agreement (*i.e.*, immediately upon

13  acceptance of the employment offer) "in accordance with [ECS's] stock option plan

14  and consistent with all other employees participating in the plan;" and (3) specifies

15  the vesting schedule of the options.  (FAC, Ex. A.)

16       In short, Mr. Doshi has adequately alleged the existence of a contract and, in

17  fact, has attached the subject Employment Agreement to the FAC.  Plaintiff has also

18  adequately alleged a breach of the Employment Agreement through ECS's failure to

19  (1) recognize or pay for Plaintiff's fully vested stock options following ECS's asset

20  sale; and (2) pay Mr. Doshi for work performed during the pay period of December

21  16, 2017 to December 31, 2017.  (*See* FAC at ¶¶ 50-54.)

22       **E.    Plaintiff Doshi's Implied Covenant Claim Does Not Contradict His**

23            **Employment Agreement.**

24       Defendants contend that Plaintiff Doshi's claim for breach of the implied

25  covenant of good faith and fair dealing fails in that it contradicts the express terms of

26  the Employment Agreement – specifically, the at-will nature of the Agreement. (Def.

27  Mot. at 14-16.)  Contrary to Defendant's argument, Mr. Doshi's implied covenant

28

claim is in no way premised on the Employment Agreement guaranteeing a specific term.  Rather, the claim alleges Defendant ECS breached the implied covenant by intentionally misclassifying Mr. Doshi as an independent contractor at times during which his role and responsibilities at ECS remained unchanged from those outlined in the Employment Agreement.

Because the express terms of the Employment Agreement do not address whether Mr. Doshi was to be treated as an employee or independent contractor, the implied covenant operated to preclude ECS from acting arbitrarily and contrary to California law so as to frustrate Mr. Doshi's right to receive the benefits of the Employment Agreement.  *See Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal.App.4th 1026, 1031-32 (1992) ("[T]he covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract.") (emphasis in original).  The FAC sufficiently alleges, therefore, that ECS breached the implied covenant by forcing Mr. Doshi to incur additional self-employment taxes he would not have had to pay if properly classified as an employee of ECS.

Defendants' reliance on *Foley v. Interactive Data Corp.*, 47 Cal.3d 654 (1988), is misplaced in that *Foley* addressed the availability of tort remedies for breach of the implied covenant in connection with a claim for wrongful discharge.  *See id*. at 683-693.  That issue is inapposite in that Mr. Doshi's implied covenant claim does not allege a wrongful discharge or seek a tort remedy.[10]

---

[10] Mr. Doshi is seeking tort remedies in connection with his tort claims, including his fraud, breach of fiduciary duty, and negligent misrepresentation claims.

**F.      Plaintiff Doshi Has Sufficiently Alleged a Claim for Breach of Fiduciary Duty Under New York Law.**

Defendant Hoffmann challenges Mr. Doshi's breach of fiduciary duty claim on the ground that Mr. Doshi never became a member of ECS and, therefore, was not owed any such duty.  More specifically, Defendant Hoffmann contends the FAC fails to establish compliance with New York's Limited Liability Company Law in conveying a membership or other equity interest to Mr. Doshi.  (Def. Mot. at 16-18.)  In other words, because the equity interest in ECS purportedly conveyed to Mr. Doshi in the Employment Agreement was a sham, Defendant Hoffmann never assumed fiduciary duties of loyalty and disclosure to Mr. Doshi.  The Court should reject Defendant Hoffmann's attempt to further exploit his own fraudulent conduct.

First, Defendant Hoffmann assumes incorrectly that, at the pleading stage, Mr. Doshi must establish a membership interest in ECS by showing full compliance with ECS's operating agreement and legal formalities.  Mr. Doshi alleged on information and belief that Defendant Hoffmann is the sole member of ECS (*see* FAC ¶ 3),[11] a fact confirmed by Mr. Hoffmann's own declaration.  (*See* Declaration of Paul Hoffmann [Doc. #2] ¶ 3.)  As the sole member of ECS, Mr. Hoffmann obviously held a majority membership interest and was, therefore, authorized to convey whatever interest he so chose.  *See* N.Y. L.L.C. Law § 602(b)(1) (providing that a person may acquire a membership interest "directly from the limited liability company, upon compliance with the operating agreement, or, if the operating agreement does not so provide, *upon the vote or written consent of a majority* in interest of the members") (emphasis added).  When viewed in the light most favorable to Mr. Doshi, the

_____

[11] Defendants suggest Mr. Doshi made certain allegations to "invoke the jurisdiction of this Court," (Def. Mot. at 18), despite the fact that they removed the case.  Nevertheless, as discussed, *infra* at pp. 19-20, Mr. Doshi's breach of fiduciary duty claim is not dependent upon him being an actual member of the LLC.

1  allegations in the FAC and the incorporated Employment Agreement are sufficient to

2  establish Defendants' consent to convey an equity interest to Mr. Doshi at the time of

3  the Agreement's execution, whether through stock options in an affiliated entity or a

4  minority membership interest in the LLC itself.  *See generally Cottone v. Selective*

5  *Surfaces, Inc.*, 68 A.D.3d 1038, 1039 (N.Y. Sup. Ct. 2009) ("Accepting the facts

6  alleged in the complaint as true and according the plaintiff the benefit of every

7  possible inference . . . , the plaintiff allegedly became a minority member and owner

8  of the defendant . . . and was thus owed a fiduciary duty by the managing member")

9  (internal citations omitted).

10     Furthermore, the allegations in the FAC are sufficient to establish a fiduciary

11  duty, whether or not Mr. Doshi actually acquired an equity interest in ECS, because

12  under New York law[12] an otherwise arm's-length business transaction can give rise to

13  a fiduciary relationship where the defendant "had superior expertise or knowledge

14  about some subject and misled plaintiff by false representations concerning that

15  subject."  *Roni LLC v. Arfa*, 74 A.D.3d 442, 444, 903 N.Y.S.2d 352, 355 (2010)

16  (quoting *Stuart Silver Assocs., Inc. v. Baco Dev. Corp*., 245 A.D.2d 96, 99, 665

17  N.Y.S.2d 415 (1997)).  In particular, New York law recognizes that "the organizer of

18  a limited liability company is a fiduciary of the investors it solicits to become

19  members."  *Roni*, 74 A.D.3d at 444 ("It is well settled that *before* and after a

20  corporation comes into existence, its promoter acts as the fiduciary of that

21  corporation and its present *and anticipated shareholders*." (emphasis added).

---

23  [12] Although many of Mr. Doshi's causes of action are governed by California law, his

24  claims for breach of fiduciary duty and an accounting should be governed by New

25  York law because ECS was organized as a limited liability company in New York

   and pursuant to New York law.  *Cf. In re Verisign, Inc., Derivative Litig.*, 531

26  F.Supp.2d 1173, 1214 (N.D. Cal. 2007) (noting that courts in California follow the

27  "internal affairs" doctrine, which provides that "the law of the state of incorporation

   governs the liabilities of officers or directors to the corporation and its shareholders").

28

1   Accordingly, because the allegations in the FAC establish Defendant Hoffmann had

2   superior knowledge about a subject – the nonexistence of ECS's purported stock

3   option plan – and misled Mr. Doshi about that subject (*see, e.g.*, FAC ¶¶ 15, 21, 24),

4   the existence of a fiduciary relationship has been adequately pled.

5          **G.     Plaintiff Doshi Is Entitled to an Accounting Under New York Law.**

6          Defendants erroneously assert that Plaintiff Doshi is not entitled to an

7   accounting because he is not a member of ECS. (Def. Mot. at 18.)  Under New York

8   law, an accounting is an equitable remedy to which a plaintiff is entitled upon a

9   showing of "a fiduciary relationship between the plaintiff and defendant and a breach

10  of that fiduciary duty by the defendant."  *Soley v. Wasserman*, 823 F.Supp.2d 221,

11  237 (S.D.N.Y. 2011).  Accordingly, for the reasons discussed in support of Mr.

12  Doshi's breach of fiduciary duty claim, *supra* at pp. 18-20, he has adequately pled

13  facts sufficient to establish both the existence and breach of a fiduciary relationship

14  and, in turn, a right to an accounting under New York law.

15  **IV.   <u>CONCLUSION</u>**

16         For the foregoing reasons, Plaintiff Ajay Atul Doshi respectfully requests that

17  the Court deny Defendants' Motion in its entirety.  Should the Court grant the motion

18  in whole or in part, Plaintiff respectfully requests that any dismissal be without

19  prejudice and with leave to file an amended complaint.

20  Dated: June 28, 2018

21                                      Respectfully submitted,

22

23                                      FRANKLIN | SOTO LLP

24                                      */s/ Joshua D. Franklin*

25                                      Joshua D. Franklin
                                        Email: josh@franklinsoto.law

26                                      Cheryl Dunn Soto
                                        Email: cheryl@franklinsoto.law

27

28                                      *Attorneys for Plaintiff Ajay Atul Doshi*

1

2

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 28, 2018, I filed the foregoing PLAINTIFF'S

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED

COMPLAINT using the Court's CM/ECF system, which will send e-mail notification

of the filing to counsel for all parties.  This document is available for viewing and

downloading via the CM/ECF system.

/s/ *Joshua D. Franklin*
Joshua D. Franklin

CERTIFICATE OF SERVICE
-1-