UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AJAY ATUL DOSHI,<br><br>         Plaintiff,<br><br>v.<br><br>ECOMMISSION SOLUTIONS, LLC; PAUL G. HOFFMANN; and DOES 1 through 10, inclusive,<br><br>         Defendants. | Case No.: 18-CV-781 JLS (BLM)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>(ECF No. 7) |

  Presently before the Court is Defendants eCommission Solutions, LLC and Paul G. Hoffmann's Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss" or "MTD," ECF No. 7). Also before the Court is Plaintiff Ajay Atul Doshi's Response in Opposition ("Opp'n," ECF No. 8) and Defendant's Reply in Support of the Motion to Dismiss ("Reply," ECF No. 10.) The Court vacated oral argument and took the matter under submission without oral argument. ECF No. 9. Having considered the Parties' arguments and the law, the Court rules as follows.

/ / /

/ / /

/ / /

/ / /

# BACKGROUND

Defendant eCommission Solutions, LLC ("ECS" or the "Company") is a data management technology company that serves companies throughout the travel industry. ECF No. 6 ("FAC") ¶ 8.[1] It is a limited liability company organized under the laws of New York. *Id.* ¶ 3. Defendant Paul G. Hoffman serves as the managing member of ECS, as well as its President and Chief Executive Officer. *Id.* ¶ 2.

Plaintiff Ajay Atul Doshi began working full-time for ECS in March 2015 to perform product engineering services as an independent contractor. *Id.* ¶¶ 9, 10. Mr. Doshi resided in San Diego County. *Id.* ¶ 9.

By letter dated August 11, 2015, and transmitted by e-mail, Mr. Hoffman offered Mr. Doshi the position of Vice President, Product Engineering at ECS. *Id.* ¶ 11; *see also id.* Ex. A ("Employment Agreement"). Attached to the email was an "Employment Offer" purporting to "set[] forth the material terms of the offer." *See generally* FAC Ex. A. The offer included Mr. Doshi's "Duties & Responsibilities" (which Mr. Doshi already had been performing since the inception of his employment with ECS as an independent contractor in March 2015), "Start Date," and "Base Salary." *Id.* ¶ 12; *see also* Employment Agreement. It also noted that Mr. Doshi's "employment with ECS will be 'at will[,]' meaning that either you or ECS may terminate the relationship at any time, though ECS will only do so for cause or in the event the Company's financial condition requires it." Employment Agreement. Pursuant to the terms of the offer, Mr. Doshi was also "eligible to earn an annual bonus," which "will be determined using a number of weighted factors including . . . [t]he overall financial performance of the Company" and "[t]he discretion of the Executive Leadership Team and/or the Board of Directors." *Id.*

/ / /

---

[1] For purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "must accept 'all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.'" *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012) (quoting *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009)).

Finally, and most importantly for purposes of this motion, the offer purported to grant Mr. Doshi certain "Stock Options":

> **Stock Options:** You will be granted one hundred fifty thousand (150,000) stock options pursuant to this Agreement. The terms and conditions of the grant will be in accordance with the Company's stock option plan and consistent with all other employees participating in the plan.
> - The strike price will be determined once the Company's new corporate and capital structures are put in place.
> - The grant will be subject to the following vesting schedule:
>   o Twenty-five percent (25%) upon joining the Company;
>   o Twenty-five percent (25%) at the end of your first year of employment;
>   o Twenty-five percent (25%) at the end of your second year of employment; and
>   o Twenty-five percent (25%) at the end of your third year of employment.
>     ▪ All non-vested options shall vest if there is a liquidity event before the vesting date(s).
>     ▪ Any non-vested options shall be forfeited upon termination or resignation.
>
> You will be eligible to earn additional grants over the duration of your employment. The option grant and associated vesting schedule are dependent on your continued employment with the Company.

*Id.*; *see also* FAC ¶ 13. In reliance on ECS's promise of stock options, FAC ¶ 14, Mr. Doshi "AGREED AND ACCEPTED" the Agreement on August 21, 2015. *See* Employment Agreement.

Unbeknownst to Mr. Doshi, however, ECS did not have a stock option plan in place at the time it made the employment offer to Mr. Doshi. FAC ¶ 15. In fact, ECS never implemented any stock option plan for the benefit of Mr. Doshi or any of ECS's other employees. *Id.* Mr. Hoffman was aware when he made the employment offer to Mr. Doshi that ECS did not have an employee stock option plan, but nevertheless presented the

employment offer to Mr. Doshi with the intent of inducing Mr. Doshi to accept the position of Vice President, Product Engineering at ECS. *Id.* Had Mr. Doshi been aware that there was no stock option plan and that he would not be receiving stock options or any other form of equity in ECS, he would not have accepted the position. *Id.*

Mr. Doshi first learned that ECS had no employee stock option plan in November 2016. *Id.* ¶ 16. At that time, Mr. Doshi had been discussing with Mr. Hoffman the possible sale of ECS to Onyx CenterSource ("Onyx"). *Id.* Despite the fact that no employee stock option plan was in place, Mr. Hoffman promised Mr. Doshi that he would be "taken care of" following the putative sale of ECS by receiving a percentage of the sale proceeds. *Id.* When Mr. Doshi asked for an estimate, Mr. Hoffman implored Mr. Doshi to "trust him." *Id.* Around January 19, 2017, as negotiations regarding the sale of ECS to Onyx moved forward, Mr. Hoffman again told Mr. Doshi that he would be taken care of financially following the closing of the sale. *Id.* ¶ 17.

In late January or early February 2017, however, Mr. Hoffman informed Mr. Doshi—contrary to his prior representations—that Mr. Doshi might not receive any compensation in connection with the sale of ECS to Onyx. *Id.* ¶ 18. Mr. Hoffman explained that although he was "trying to do right," he was also "looking out for his retirement and his family." *Id.* Nonetheless, Mr. Hoffman said that he would speak with Mr. Doshi following the closing of the sale to see whether something could be worked out. *Id.*

Shortly thereafter, Mr. Doshi informed Mr. Hoffmann that he was prepared to quit if ECS did not honor its agreement with him. *Id.* ¶ 19. Approximately one week later, Mr. Doshi received a letter stating he would receive some payment based on the amount of shares he had been promised in the Employment Agreement. *Id.*

The sale closed on May 4, 2017. *Id.* ¶ 20. At that time, Mr. Doshi continued to work for ECS—performing the exact same duties and responsibilities he had been performing since March 2015—but was reclassified as an independent contractor. *Id.* As a result, Mr. Doshi was forced to pay certain self-employment taxes. *Id.*

After learning that the sale had closed, Mr. Doshi asked Mr. Hoffmann about the compensation he had been promised. *Id.* ¶ 21. Mr. Hoffmann informed Mr. Doshi that Mr. Doshi was not legally entitled to any compensation as a result of the sale, *id.*; nonetheless, Mr. Hoffman provided certain information purporting to reflect ECS's expenses incurred as a result of the sale. *Id.* Mr. Doshi believes that Mr. Hoffman substantially overstated the amount of expenses incurred by ECS. *Id.*

On July 31, 2017, ECS and Mr. Hoffmann offered to pay Mr. Doshi a "discretionary bonus" of $13,600, on the condition that Mr. Doshi accept the offer within seven business days and release any and all claims against ECS. *Id.* ¶ 22.

Mr. Doshi filed a complaint in the Superior Court of California, County of San Diego on November 21, 2017, asserting causes of action for: (1) fraud by intentional misrepresentation, (2) negligent misrepresentation, (3) violation of California Corporations Code section 25401, (4) breach of contract, (5) breach of covenant of good faith and fair dealing, (6) breach of fiduciary duty, (7) violation of California Labor Code section 226(a), and (8) an accounting. *See generally* ECF No. 1-3. Defendants removed to this Court on April 23, 2018, *see generally* ECF No. 1, and Plaintiff filed the operative First Amended Complaint ("FAC") alleging the same eight causes of action as his original complaint on April 26, 2018. *See generally* ECF No. 6. Defendants filed the instant MTD on May 10, 2018. *See generally* ECF No. 7.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Additionally, claims that allege fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (noting that particularity requires plaintiff to

allege the "who, what, when, where, and how" of the alleged fraudulent conduct).

**ANALYSIS**

Defendants move for dismissal, with prejudice, of Plaintiff's first, second, third, fourth, fifth, sixth, and eighth causes of action. The Court addresses each of these causes of action in turn below.

**I.     First Cause of Action: Fraud by Intentional Misrepresentation**

The parties agree that, under California law, the elements of fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996) (quoting 5 Witkin, Summary of Cal. Law, Torts, § 676 (9th ed. 1988)). Such a claim "must be pled with particularity as required by Rule 9(b)." *UCAR Tech. (USA) Inc. v. Yan Li*, No. 5:17-CV-01704-EJD, 2017 WL 6405620, at *9 (N.D. Cal. Dec. 15, 2017), *reconsideration granted on other grounds*, 2018 WL 2555429 (N.D. Cal. June 4, 2018). Defendants argue that Plaintiff's fraud claim fails because Plaintiff fails to allege a misrepresentation of a past or existing fact or that Defendants never intended to perform and because Plaintiff did not plead reasonable or justifiable reliance. MTD at 4–8.

*A.     Misrepresentation*

Defendants claim that the alleged misrepresentation—*i.e.*, that Plaintiff would receive 150,000 stock options—"is a statement of future action, not a representation about a past or existing fact." *Id.* at 5. In so arguing, Defendants rely heavily on the contractual provision providing that "[t]he strike price will be determined once the Company's new corporate and capital structures are in place," contending that the grant of stock options was clearly conditional on a change in ECS's corporate structure. Reply at 2–3 (quoting Employment Agreement). Plaintiff counters that he was to be granted the stock options "pursuant to this Agreement" and "in accordance with the Company's stock option plan," and that 25% of the stock options were to vest "upon joining the Company." Opp'n at 10–11 (quoting Employment Agreement). Consequently, Plaintiff argues, the Employment

Agreement represented the existence of an employee stock option plan at the time of the employment offer. *Id.*

Viewing the facts in the light most favorable to Plaintiff, as the Court must at this stage in the proceedings, the Court concludes that Plaintiff adequately has alleged a misrepresentation here. Notwithstanding the fact that the strike price was to be set following a corporate reorganization, the Court concludes that Plaintiff adequately has alleged that the Stock Options provision of the Employment Agreement misrepresented that Plaintiff would in fact receive 150,000 shares of stock if he accepted employment with ECS and met the vesting requirements. *See, e.g.*, *Kelly v. Intelligenetics, Inc.*, No. C 95-20063 RMW, 1995 WL 232387, at *2 (N.D. Cal. Apr. 10, 1995) (allowing fraud claim premised on alleged misrepresentation that plaintiff "would be granted an option to purchase 500,000 to 600,000 shares of [employing company] after close of escrow for [purchasing company]'s purchase of stock of [employing company]" because "plaintiff was assured that such a decision had been made and, in fact, was informed of specific aspects of his future compensation"); *see also Spears v. Amazon.com.KYDC LLC*, No. CIV.A. 10-325-GFVT, 2013 WL 556392, at *6 (E.D. Ky. Feb. 12, 2013) ("[I]t is certainly plausible that the conditional stock grant could be read as a representation that [Plaintiff] would likely receive [the represented number of] shares of [Defendant company's] stock if he came to work at [Defendant company] and met the vesting requirement.").

Further, Plaintiff adequately has alleged that Defendants never intended to perform under the Stock Options provision of the Employment Agreement. Here, Mr. Doshi signed the Employment Agreement in August 2015. FAC ¶ 14; *see also* Employment Agreement. In November 2016—over a year later—Mr. Hoffmann first discussed with Mr. Doshi the potential sale of ECS to Onyx and Mr. Doshi first learned that ECS never established an employee stock option plan. FAC ¶ 16. In fact, between August 11, 2015, when Defendants offered the position of Vice President, Production Engineering to Plaintiff, and May 4, 2017, when ECS agreed to sell its assets to Onyx, Defendants "never implemented any stock option plan for the benefit of Mr. Doshi or any of its employees." *Id.* ¶¶ 11, 14–

8

15, 20.  Consequently, Plaintiff alleges that in over a year-and-a-half, Defendants took no steps toward the formulation of an employee stock option plan.  The Court therefore concludes that Plaintiff has adequately alleged that Defendants had no intention of performing under the Stock Options provision of the Employment Agreement as of August 11, 2015.  *See, e.g.*, *Locke v. Warner Bros.*, 57 Cal. App. 4th 354, 368 (1997) ("Fraudulent intent must often be established by circumstantial evidence, and may be 'inferred from such circumstances as defendant's . . . failure even to attempt performance.'") (quoting *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985)).

### B.  *Justifiable Reliance*

Defendants also argue that Plaintiff has not pled justifiable reliance because "Plaintiff knew ECS was a limited liability company" and "therefore knew that ECS had no ability to issue stock options."  MTD at 7–8.

This argument is unavailing.  As Plaintiff notes, "ECS hired him as its Vice President of *Product Engineering* (FAC ¶ 11), not as an expert in corporate governance of the intricacies of [employee stock option plans]."  Opp'n at 16 (emphasis in original). Although Plaintiff could have asked for a copy of the stock option plan referenced in the employment offer, *see, e.g.*, *Butvin v. DoubleClick, Inc.*, No. 99 CIV. 4727 (JFK), 2000 WL 827673, at *10 (S.D.N.Y. June 26, 2000), *aff'd*, 22 F. App'x 57 (2d Cir. 2001), the Court is unprepared to conclude at this early stage in the proceedings that Plaintiff's reliance was not reasonable.  *See, e.g.*, *OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 864 (2007) ("Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact.").

The Court therefore **DENIES** Defendants' Motion to Dismiss with respect to Plaintiff's first cause of action for fraud by intentional misrepresentation.

### II.  Second Cause of Action: Negligent Misrepresentation

Defendants claim that Plaintiff's negligent misrepresentation cause of action must be dismissed because it is predicated upon the same, deficient alleged misrepresentations

as his fraud cause of action. MTD at 8–9. Because the Court concludes that Plaintiff adequately has alleged a cause of action for fraud by intentional misrepresentation, *see supra* Section I, the Court **DENIES** Defendants' Motion to Dismiss as to Plaintiff's negligent misrepresentation cause of action.

## III. Third Cause of Action: Violation of California Corporations Code § 25401

"[T]o have a valid cause of action under California Corporations Code § 25401 [("Section 25401"), the plaintiff] must allege that there was a sale or purchase of stock in California by fraudulent untrue statements or by omitting material facts that would by omission make the statements misleading." *MTC Elec. Techs. Co. v. Leung*, 876 F. Supp. 1143, 1147 (C.D. Cal. 1995).

Defendants urge the Court to dismiss Plaintiff's cause of action under Section 25401 on the grounds that Plaintiff has failed to allege a material misrepresentation or intent. MTD at 9–12. For the reasons discussed above, *see supra* Section I, the Court concludes that Plaintiff has adequately alleged a misrepresentation and intent.[2]

The Court also finds that Plaintiff adequately has alleged that the purported grant of stock options was material. The parties agree that a misrepresentation is material if there is "a substantial likelihood" that a "reasonable shareholder would consider it important." *Compare* MTD at 11 (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)), *with* Opp'n at 20 (quoting *Ins. Underwriters Clearing House, Inc. v. Natomas Co.*, 184 Cal. App. 3d 1520, 1526 (1986)). Here, of course, we are speaking of a prospective employee rather than a shareholder, so the relevant inquiry is whether a reasonable prospective employee would consider the alleged misrepresentation important in deciding whether to accept the employment offer.

---

[2] The Court agrees with Plaintiff that Defendants cannot rely on California Corporations Code section 25501 ("Section 25501"), an affirmative defense, for dismissal here. As an affirmative defense, dismissal based on Section 25501 would be warranted only if it were clear *from the face of the complaint* that Defendants exercised reasonable care in making the alleged misrepresentations. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013). The Court concludes that such a determination would be improper at this stage of the proceedings.

The Court concludes that the alleged misstatements concerning the Stock Options were material. As Plaintiff notes, there is some indication that Defendants themselves considered the term material, as they presented the Employment Offer—including the Stock Options provision—as constituting the "material terms of the offer." *See* Opp'n at 20; *see also* Employment Agreement. And naturally, the compensation and benefits offered to a prospective employee by a prospective employer would be "important" to a prospective employee's employment decision. *See, e.g.*, *Dubin v. E.F. Hutton Grp. Inc.*, 695 F. Supp. 138, 146–47 (S.D.N.Y. 1988) ("[W]here the defendant offered a stock option to the plaintiff prior to the existence of an employer-employee relationship, 'the option was a *quid pro quo* offered to induce plaintiff to enter into the employ of [defendant].'") (second alteration in original) (quoting *Collins v. Rukin*, 342 F. Supp. 1282, 1289 (D. Mass. 1972)). The Court therefore **DENIES** Defendants' Motion to Dismiss with respect to Plaintiff's third cause of action for violation of Section 25401.

## IV. Fourth Cause of Action: Breach of Contract

In California, a contract is formed when (1) parties capable of contracting (2) consent (3) to a lawful object (4) for sufficient consideration. Cal. Civ. Code § 1550. Plaintiff alleges two distinct breaches in his First Amended Complaint: (1) "Defendant ECS breached the Employment Agreement by failing to recognize the 150,000 'stock options' promised to Plaintiff Doshi," *id.* ¶ 51; and (2) after unilaterally electing to treat Mr. Doshi as an independent contractor, ECS failed to pay an invoice for $5,000 for the pay period of December 16 through 31, 2017, which "Mr. Doshi was required to submit . . . as a condition of payment for his services to ECS." *Id.* ¶ 54. Defendants claim that Plaintiff fails to allege the existence of a contract in either case.

### A. *Failure to Recognize Stock Options*

With regard to Plaintiff's first theory, Defendants argue that there was no contract granting stock options to Plaintiff because the Employment Agreement omitted a material term—the strike price—and was therefore illusory. MTD at 12–14. Plaintiff responds that
///

"the absence of a definitive strike price does not render the Employment Agreement illusory." Opp'n at 21.

It is true that "[w]here a contract has but a single object, and such object is . . . so vaguely expressed as to be wholly unascertainable, the entire contract is void." Cal. Civ. Code § 1598. "However, [t]he law does not favor, but leans against, the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained." *Cal. Lettuce Growers v. Union Sugar Co.*, 45 Cal. 2d 474, 481 (1955) (collecting cases) (internal quotation marks omitted) (quoting *McIllmoil v. Frawley Motor Co.*, 190 Cal. 546, 549 (1923)); *see also Krantz v. BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 175, *as modified* (May 22, 2001) ("It is clear from case law on the issue of indefiniteness and contractual enforceability that courts have a pronounced preference for enforcing agreements, if that is reasonably possible.") (collecting cases). California law is clear that "the complete absence of any mention of the price is not necessarily fatal: The contract may be interpreted to mean the market price or a reasonable price." 1 Witkin, Summary of Cal. Law, Contracts § 142 (11th ed. 2018).

Such is the case here. The Court agrees with Plaintiff that *Sugerman v. MCY Music World, Inc.*, 158 F. Supp. 2d 316 (S.D.N.Y. 2001) is unavailing. Not only is *Sugerman* not binding on this Court, but it is clearly distinguishable from the facts alleged by Plaintiff. In *Sugerman*, the relevant agreement provided that:

> [I]n the event [prospective investor] will do a substantial injection [of capital into the defendant company], the company would like to put [the plaintiff] on the company stock option plan, which is in development at this point in time. As soon as the plan is properly in place, [defendant company] would be happy to address the relevant documents to [plaintiff] immediately.

*Id.* at 324 n.6. In *Sugerman*, it is clear that the stock option plan was in development. Not only was there no strike price, but it is unclear how many shares the plaintiff would be entitled to purchase or when they would vest. Indeed, the letter in *Sugerman* indicates only

that the defendant company "would like to put [the plaintiff] on the company stock option plan" and "in the event" of an infusion of capital. *Id.*

Here, by contrast, Defendants "granted one hundred fifty thousand (150,000) stock options" to Plaintiff. *See* Employment Agreement. The Employment Agreement specified that "[t]he terms and conditions of the grant will be in accordance with the Company's stock option plan," *see id.*, with no mention that the stock option plan had not yet been formulated. Indeed, the Employment Agreement indicated that "[t]he terms and conditions of the grant will be in accordance . . . with all other employees participating in the plan," *see id.*, which could be read to imply that the plan was already in effect. The Employment Agreement also provided a specific vesting schedule, with 25 percent of the stock options vesting upon Plaintiff's joining ECS, and an additional 25 percent vesting at the end of each subsequent year. *Id.*

The parties have not identified, and the Court has been unable to find, any cases entirely analogous to this fact pattern. Nonetheless, the Court finds *Krantz v. BT Visual Images, LLC*, 89 Cal. App. 4th 164 (2001), instructive. In *Krantz*, the plaintiff entered into an agreement with the defendants to prepare and submit a joint proposal for a video conferencing system and, in the event the bid was accepted, to negotiate the resulting contract jointly. *Id.* at 169. As part of the agreement, the defendants assured the plaintiff that he "would earn increased profit margins on all components manufactured by defendants and on all future business resulting from work on the initial . . . bid." *Id.* After the bid was won, however, the defendants prevented the plaintiff from participating in the contract and failed to pay him. *Id.* The plaintiff therefore sued for, among other things, breach of contract. *Id.*

The California Court of Appeal reversed the trial court's order summarily adjudicating the breach of contract claim on grounds that the contract was too indefinite to be enforced, *id.* at 175, reasoning that "it is clear from both the text of the agreement and the context of its execution and performance, as alleged in the amended complaint, that the
///

13

essential contract terms were not so indefinite as to preclude enforcement." *Id.* at 176. The court noted that,

> [w]hile [it] might agree the unstated future margins and price terms are indefinite, they were necessarily so: it remained to be seen whether the joint proposal would be accepted. Moreover, they are not essential elements of the agreement to jointly prepare and submit a bid . . . , dependent as they were on the scope of [prospective client]'s purchases, if any.

*Id.*

Here, as in *Krantz*, the indefiniteness of the price term is not fatal to the enforceability of the agreement. Defendants here granted Plaintiff stock options as part of the Employment Agreement. *See generally* Employment Agreement. Pursuant to the Stock Options provision, Plaintiff has the right—but not the obligation—to purchase stock as a price to "be determined once the Company's new corporate and capital structures are put in place." *See id.* As in *Krantz*, this provision is "necessarily" indefinite. *See* 89 Cal. App. 4th at 176. Further, although Plaintiff alleges that the term was material to his acceptance of the employment offer, the term is not necessarily an "essential element" of the Employment Agreement: The parties here were contracting for Plaintiff's employment, and the strike price of the stock options was but one detail of one element of Plaintiff's compensation. Consequently, at this time, the Court declines to find as a matter of law that the absence of a strike price renders the Employment Agreement so indefinite as to be void. *See McGonagle v. Somerset Gas Transm. Co.*, No. 11AP-156, 2011 WL 5353089, at *6 (Ct. App. Ohio Nov. 8, 2011) (reversing summary adjudication to find "letter does constitute an enforceable agreement regarding appellant's stock option" despite fact that "[t]he exercise price per share . . . shall be equal to the price per share for . . . equity financing" anticipated to be procured in the future).

### B. Failure to Pay Invoices

Defendants also contend that there was no contract obligating ECS to pay Plaintiff's invoices. MTD at 14. The Court disagrees.

Plaintiff alleges that he entered into an Employment Agreement with Defendants, which entitled him to a base salary of $150,000 per year. *See generally* Employment Agreement. Mr. Doshi contends that he was converted to an independent contractor following the asset sale to Onyx but that, under the Employment Agreement, ECS "fail[ed] to pay Mr. Doshi's wages for the pay period of December 16, 2017 to December 31, 2017." *See* FAC ¶ 54. Construing the facts most favorably to Mr. Doshi, the Court may infer that the Employment Agreement still governed the parties' relationship following Mr. Doshi's conversion to an independent contractor, thus obligating Defendants to pay Mr. Doshi's salary. Mr. Doshi therefore sufficiently alleges the existence of a contract entitling him to compensation for his services.

Consequently, the Court **DENIES** Defendants' Motion to Dismiss with respect to Mr. Doshi's fourth cause of action for breach of contract.

**V.     Fifth Cause of Action: Breach of Covenant of Good Faith and Fair Dealing**

Every contract contains an implied covenant of good faith and fair dealing. *Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 43 (1999). Performance in good faith requires the parties to be "faithful[] to an agreed common purpose" and to perform "consistent[ly] with the justified expectations of the other party." *Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 921 n.5 (1978). The covenant requires "that neither party do anything that will injure the right of the other to receive the benefits of the contract." *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal. App. 4th 1306, 1332 (2009). California courts determine what conduct meets those criteria on a "case by case basis" depending on the "contractual purposes and reasonably justified expectations of the parties." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990).

Here, Plaintiff alleges that Defendants breach the implied covenant by "unfairly interfer[ing] with Plaintiff Doshi's right to receive the benefits of the [Employment A]greement[] by intentionally misclassifying Mr. Doshi on various occasions as an independent contractor." FAC ¶ 62. Defendants assert that Plaintiff's implied covenant

cause of action must be dismissed because it contradicts the express terms of the Employment Agreement and purports to add terms to a subject completely covered by the Employment Agreement. MTD at 14–16. Specifically, Defendants argue, because the Employment "Agreement provides that Plaintiff was an at will employee[,] . . . an implied covenant that ECS could not terminate Plaintiff's employment contradicts the express terms of the Agreement and is therefore improper." MTD at 15 (citing *Foley v. Interactive Corp.*, 47 Cal. 3d 654, 698 n.39 (1988)). Further, "[b]ecause . . . the conditions under which ECS could terminate Plaintiff's employment . . . is completely covered in the Agreement, there can be no implied covenant claim on the same subject matter." *Id.* at 16 (citing *Berger v. Home Depot U.S.A., Inc.*, 476 F. Supp. 2d 1174. 1177 (C.D. Cal. 2007); *Pasadena Life v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004); *Racine & Laramie, Ltd. v. Dep't of Parks & Rec.*, 11 Cap. App. 4th 1026, 1032 (1992)).

Plaintiff counters that the "express terms of the Employment Agreement do not address whether Mr. Doshi was to be treated as an employee or independent contractor," and he "alleges Defendant ECS breached the implied covenant by intentionally misclassifying Mr. Doshi as an independent contractor at times during which his role and responsibilities at ECS remained unchanged from those outlined in the Employment Agreement." Opp'n at 23. Accordingly, "the implied covenant operated to preclude ECS from acting arbitrarily and contrary to California law so as to frustrate Mr. Doshi's right to receive the benefits of the Employment Agreement." *Id.* (citing *Racine & Laramie, Ltd.*, 11 Cap. App. 4th at 1031).

It is true that Plaintiff was an at-will employee; however, Defendants conveniently omit that, pursuant to the Employment Agreement, ECS promised "only to [terminate Plaintiff] for cause or in the event the Company's financial condition requires it." *See* Employment Agreement. This contractual provision serves to distinguish this action from the line of cases descended from *Foley*, in which the California Supreme Court recognized that, generally, "breach of the implied covenant cannot logically be based on a claim that [the] discharge [of an at-will employee] was made without good cause." 47 Cal. 3d at 698

n.39.  The Court therefore concludes that Plaintiff's implied covenant cause of action is neither contradicted by nor preempted by the terms of the Employment Agreement.

The parties do not identify, nor has the Court found, any case directly on point.  In dicta, however, the California Supreme Court has intimated that "the covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled, such as compensation already earned." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 353 n.18 (2000). Such is the case here, where Plaintiff alleges that ECS "intentionally misclassif[ied] Mr. Doshi on various occasions as an independent contractor," thereby "unfairly interfer[ing] with Plaintiff Doshi's right to receive the benefits of the [Employment A]greement[]." FAC ¶ 62.  The Court therefore **DENIES** Defendants' Motion to Dismiss Plaintiff's fifth cause of action for breach of the implied covenant of good faith and fair dealing.

## VI.     Sixth Cause of Action: Breach of Fiduciary Duty

Under New York law,[3] "to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct." *Kurtzman v. Bergstol*, 835 N.Y.S.2d 644, 646 (App. Div. 2007).

Defendants claim that Plaintiff has failed to allege the existence of a fiduciary relationship here because Plaintiff has not adequately alleged that he was a member of the LLC.  MTD at 16–18.  Plaintiff counters that the "Employment Agreement [is] sufficient to establish Defendants' consent to convey an equity interest to Mr. Doshi at the time of the Agreement's execution, whether through stock options in an affiliated entity or a minority membership in the LLC itself."[4]  Opp'n at 25.

---

[3] The parties appear to agree that Plaintiff's sixth and eighth causes of action are governed by New York, rather than California, law because ECS was organized as a limited liability company in New York and pursuant to New York law.  *See* Opp'n at 25 n.12; *see also* MTD at 17; Reply at 9–10.

[4] Alternatively, Plaintiff argues that, "under New York law an otherwise arm's length business transaction can give rise to a fiduciary relationship where the defendant 'had superior expertise or knowledge about

It is clear that, under New York law, "employment relationships do not create fiduciary relationships." *Rather v. CBS Corp.*, 886 N.Y.S.2d 121, 125 (App. Div. 2009). Plaintiff therefore alleges that he is owed fiduciary duties as a minority member of ECS: "Mr. Doshi obtained a non-managing membership interest in ECS upon the vesting of the first 25 percent interest in his stock options, which occurred upon his joining ECS, per the Employment Agreement." FAC ¶ 65. Both parties point to Section 602(b)(1) of New York's Limited Liability Company Law, which provides that, "[a]fter the effective date of a limited liability company's initial articles of organization, a person may be admitted as a member . . . upon compliance with the operating agreement or, if the operating agreement does not so provide, upon the vote or written consent of a majority in interest of the members," with Plaintiff claiming that he has adequately pleaded that he has gained a membership interest in ECS and Defendants arguing that he has not.

The Court believes that Plaintiff has adequately alleged that Mr. Hoffmann, as the sole member of ECS, consented in writing to grant Plaintiff the option of acquiring a membership interest in ECS. *See* FAC ¶¶ 2–3, 13; *see also* Employment Agreement. Plaintiff also alleges that 37,500 of the 150,000 stock options promised vested upon his acceptance of employment on August 21, 2015. *See* FAC ¶ 65; *see also* Employment Agreement. It is also clear, however, that Plaintiff never exercised the options to obtain any equity in ECS, albeit through no fault of his own. On the other hand, if Plaintiff is to be believed (as he must at this stage of the proceedings), Mr. Hoffmann granted Mr. Doshi the stock options without the intention of ever making good on them. *See supra* Section I.

The relevant question, therefore, is whether Mr. Hoffman's conveyance to Mr. Doshi of *an option* to purchase equity in ECS suffices as a conveyance to Mr. Doshi of a membership interest in ECS, such that Defendants owed Mr. Doshi fiduciary duties as a non-managing member. Given the dearth of authority interpreting or applying Section 602,

---

some subject and misled plaintiff by false representations concerning that subject.'" Opp'n at 25 (footnote omitted) (quoting *Roni LLC v. Arfa*, 903 N.Y.S.2d 352, 355 (App. Div. 2010)). The Court agrees with Defendants that *Roni LLC*, a promoter liability case, is not applicable here.

the Court cannot conclude at this stage as a matter of law that Plaintiff has not adequately alleged that the requirements of Section 602 were fulfilled. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss as to Plaintiff's sixth cause of action for breach of fiduciary duty.

## VII. Eighth Cause of Action: Accounting

An accounting is an equitable remedy to which a plaintiff is entitled upon a showing of "a fiduciary relationship between the plaintiff and defendant and a breach of that fiduciary duty by the defendant." *Soley v. Wasserman*, 823 F. Supp. 2d 221, 237 (S.D.N.Y. 2011); *see also AHA Sales, Inc. v. Creative Bath Prod., Inc.*, 867 N.Y.S.2d 169 (App. Div. 2008) ("The right to an accounting is premised upon the existence of a confidential or fiduciary relationship.") (internal quotation marks omitted). As with Plaintiff's sixth cause of action for breach of fiduciary duty, Defendants argue that because no fiduciary relationship existed between Plaintiff and Defendants, Plaintiff is not entitled to an accounting. MTD at 18. Because the Court concludes that Plaintiff has adequately pled the existence of a fiduciary relationship, *see supra* Section VI, the Court **DENIES** Defendant's Motion to Dismiss as to Plaintiff's eighth cause of action for an accounting.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss (ECF No. 7). Defendants **SHALL FILE** an answer to Plaintiff's First Amended Complaint in accordance with the relevant rules.

**IT IS SO ORDERED.**

Dated: September 24, 2018

Hon. Janis L. Sammartino
United States District Judge